## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTIAN WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTUIT INC.,<br><br>Defendant. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Christian Williams ("Plaintiff"), on behalf of himself and all others similarly situated, on personal knowledge as to the facts concerning himself, on information and belief as to all other matters, and based on the investigation of counsel and public statements, brings this class action against Intuit Inc. ("Intuit") and alleges as follows:

### NATURE OF THE ACTION

1.     This action concerns Intuit's campaign to intentionally divert and deceive lower income taxpayers who are eligible to receive free tax preparation and filing services under the United States Internal Revenue Service's ("IRS") Free File program ("Free File Program") to its paid TurboTax products.

2.     TurboTax is the market leading tax preparation software, owned and manufactured by Intuit, that is utilized to file more than 36 million tax returns for taxpayers every year.

3.     Pursuant to an agreement with the IRS, TurboTax and other tax preparation providers are required to cumulatively offer 70% of U.S. taxpayers based on Adjusted Gross Income ("AGI") (currently anyone with an AGI of $66,000 or less) the option to file their taxes for free.

4.     The agreement was specifically designed so that the IRS would not need to create its own free online filing system.  According to the government, the goal of the Free File Program was to implement the IRS's public policy of "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."

5.     Intuit, however, has long been luring customers into paying for a service that it promised the government and consumers it would give away for free.

6.     With knowledge that a large number of its users (the lowest earning 70% percent of American taxpayers) qualify to file their taxes online for free using TurboTax, Intuit violated its agreement with the IRS and defrauded Plaintiff and members of the Class (defined below) by actively concealing public access to the IRS's Free File Program and intentionally diverting qualified taxpayers away from its "free filing" program in favor of its paid product offerings.

7.     Only a small percentage of American taxpayers file their faxes for free.  For example, in fiscal year 2018, fewer than 2.5 million of the 100 million eligible taxpayers (less than 2.5%) participated in the Free File Program.

8.     Intuit employed deceptive and misleading advertising to fraudulently induce lower-income taxpayers into purchasing TurboTax products when they were eligible for free services pursuant to Intuit's agreement with the IRS.  Indeed, Intuit marketed its paid offerings under the product name, "Free Guaranteed"—so that qualified taxpayers believed they were filing their taxes pursuant to the Free File Program, only to be hit with unexpected charges after they already spent hours entering information and preparing to file.

9.     Because Intuit's actions and omissions violate well established legal and statutory duties that they owed to Plaintiff and all other similarly situated U.S. consumers, those

individuals were forced to suffer the consequences.  As a result of this scheme, Intuit generated

millions of dollars of ill-gotten gains from persons who can least afford it.

10.     Plaintiff brings this class action on behalf of himself and all similarly situated

consumers for actual and statutory damages, as well as punitive damages and equitable relief to

fully redress the vast harm Intuit's wrongful acts have unleashed on consumers.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)

because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of

a state different from Defendant.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

Defendant does business throughout this District and because Plaintiff resides in this District and

purchased and used the TurboTax software in this District.

13.     All conditions precedent necessary for filing this Complaint have been satisfied

and/or such conditions have been waived by the conduct of the Defendant.

## PARTIES

14.     Plaintiff Christian Williams is a resident of Far Rockaway, New York, and is a

citizen of the state of New York who paid to use the TurboTax software to file his tax returns,

despite qualifying for the IRS free filing program.  The TurboTax software advertised that Mr.

Williams would be able to file his federal income tax for free.  Further, Intuit did not disclose to

Mr. Williams that he was entitled to have his taxes prepared for free and that the edition of

TurboTax he used was the paid, rather than the free version.  Mr. Williams relied on these

misrepresentations and omissions in using TurboTax.  However, after he inputted his information

into the software, Mr. Williams was charged approximately $223.94 to file his taxes through

TurboTax during the calendar years of 2016-2018.  Had Intuit not misrepresented the nature of

its tax preparation and e-filing services and informed Plaintiff Williams of its intent to assess

fees, he would not have navigated to the TurboTax website or input his information. Had Intuit

disclosed that Mr. Williams qualified to have his taxes filed for free, he would have prepared his

taxes using the truly free TurboTax software or the software of another member of the Free File

Alliance rather than the Turbotax paid software.

      15.    Defendant's misrepresentations and omissions also fraudulently induced Plaintiff

Williams to assent to the TurboTax Terms and Conditions, specifically the agreement to

arbitrate.  Had Mr. Williams known the truth about Defendant's conduct, he would not have

agreed to the arbitration clause, which was an adhesive term which Defendant required Mr.

Williams to assent to even access the TurboTax software.  Use of the adhesive arbitration clause

was part in parcel of Defendant's fraudulent scheme.  Defendant lured consumers to its website

with advertisements of "free," when the actual free product could not even be accessed from the

main TurboTax website, forced consumers to assent to an adhesive arbitration clause before

inputting their information, and then upsold and charged them at the backend of the transaction,

while also affirmatively hiding its free software.  This was done to ensure that consumers would

not have an adequate remedy and allow Defendant to continue its unlawful practices undeterred.

In short, Plaintiff Williams challenges the validity of the arbitration clause itself as procured by

fraud.  Plaintiff Williams also challenges Intuit's class action waiver as procured by fraud.  Like

the arbitration clause, Intuit used the class action waiver to prevent consumers from obtaining

meaningful recourse due to the relatively low sums illegally taken from class members when

compared to the cost of individual litigation.

      16.    Defendant Intuit Inc. ("Intuit") is headquartered in Mountain View, California,

and is incorporated under the laws of the State of Delaware.  Intuit markets, sells, and operates

TurboTax, a tax preparation and filing software product and service, and is a member of the Free File Alliance, a nonprofit coalition of twelve tax software companies under an agreement with the IRS to provide free electronic tax services to eligible American taxpayers—the Free File Program.

## FACTUAL ALLEGATIONS

17.     Intuit Inc. is a financial software company that develops and sells financial, accounting, and tax preparation software including TurboTax, QuickBooks, and Mint.  The company's most profitable software, TurboTax, is the leading tax preparation software that provides step-by-step guidance for filling out state and federal tax returns and permits users to electronically file their tax returns using a computer or mobile device.

18.     According to Intuit's website, "[m]ore federal returns are prepared with TurboTax than any other tax preparation provider."  Intuit had revenues of more than $6.2 billion for the 12- month period ending on January 31, 2019.

**A.  Intuit Agrees to Participate in the IRS's Free File Program**

19.     On October 30, 2002, Intuit and a group of electronic tax filing companies entered into an agreement with the IRS entitled "Free Online Electronic Tax Filing Agreement" (the "Free File Agreement").  The purpose of the Free File Agreement was to provide free electronic tax return preparation and filing for qualified lower-income and economically disadvantaged taxpayers, who were the least likely to be able to afford electronic tax filings for their returns.

20.     The benefits of the Free File Agreement served objectives of all parties.  It served the IRS's objective of giving low-income taxpayers a way of being able to afford electronic tax filings, as well as shifting the American public toward e-filing as a whole as opposed to paper filing.  It also helped Intuit and the other 11 tax preparation providers' goal of not having to

compete with a government run e-file tax service, as the agreement specifically prevents the federal government from entering into the electronic tax preparation software marketplace.

21.     This commitment from the government protects the viability of the commercial tax preparers' business model by ensuring they can always charge a significant portion of the U.S. population fees for their services.  Indeed, Intuit and its competitors spent millions of dollars lobbying against the IRS creating its own free tax filing system, as well as pushing Congress to codify the Free File Agreement to ensure that a free government-sponsored program would not threaten the industry's profits.

22.     Under the Free File Agreement, Intuit agreed to coordinate with the IRS and the other providers to ensure that "their respective marketing of these Free Services … provide[s] uniformity" and "maximize[s] public awareness."  In 2002, the IRS wrote in the Federal Register: the Free File Agreement "provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service."  The IRS also instructed that the Free File Program was to offer products "equivalent to those offered for sale on the commercial market," providing "all of the features and operability of those commercial products."

23.     Intuit and the other providers explicitly agreed that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program," except for state tax returns or where the user proves to be ineligible for the Free File product.

24.     Over the sixteen years that Intuit has participated in the Free File Program, the Free File Agreement was extended eight times in documents known as "Memorandums of Understanding" or ("MOU").  The Eighth MOU is currently in effect and is extended until October 31, 2021.

25.    Article 2 of both the Seventh and Eighth MOUs states that Free File members "shall … [m]ake tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations," and shall also "[p]rovide greater service and access to the [Free File] Services to taxpayers."

26.    The Eighth MOU added that "Members shall not include a 'value added' button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page."  The Seventh MOU expressly provided that "[t]he Member shall have a prominent link permitting taxpayers on a Member's Paid Service Offering Page to easily and clearly return to the Member Free File Landing Page."

27.    The Seventh and Eighth MOUs also prohibit "requesting or collecting bank/financial information (e.g., debit/credit card information) from customers who qualify for a free return where no state tax return products have been purchased."

28.    In addition, the Eighth MOU sets forth specific rules to ensure that consumers who do not qualify for a particular member's Free File product are first redirected to other members' Free File products, for which they might be eligible, before being offered a member's paid products.

29.    The IRS Free-Filing Agreement and MOUs provide that Free File members must collectively offer 70% of U.S. taxpayers – or approximately 100 million people – the option to file their taxes for free.  For the 2018 tax season, any taxpayer whose adjusted gross income is $66,000 or less is eligible to use tax preparation software from one of these providers to prepare and file tax forms for free, although each provider sets its own eligibility requirements.

30.    Because TurboTax is the market leader with 60% of the do-it-yourself tax market and has more volume than its competitors, its eligibility requirements are more stringent.  For

TurboTax, a consumer qualifies for a free federal tax return if one has: 1) a gross annual income of $34,000 or less; 2) is eligible for the Earned Income Tax Credit; or 3) is on active military duty and has an annual gross income of $66,000 or less.[1]

31.     While 70% of U.S. taxpayers are eligible to file for free, less than 2.5% of eligible taxpayers actually utilize the program.  The reason for this disparity is due in large part to Intuit's deceptive practices to prevent lower-income taxpayers from utilizing the program in favor of its paid product offerings.

**B. Intuit's Deceptive Practices and Misrepresentations**

32.     Although the Free File Program eliminated the threat that the government would launch its own free tax filing program, it also threatened to reduce Intuit's profits by reducing the percentage of customers who purchased its paid products.

33.     Intuit instituted a fraudulent scheme to ensure that eligible taxpayers would pay for TurboTax's tax services.  Intuit set up two programs with similar and misleading names: the TurboTax "Freedom Edition" and TurboTax "Free Edition."

34.     TurboTax's actual free product is referred to as TurboTax "Freedom Edition" – which enables users eligible to complete and e-file their federal tax returns for free in accordance with the Free File Program.

35.     Yet, TurboTax also offers a different "free" online tax product bearing a similar name: TurboTax "Free Edition."  Despite being heavily marketed, the TurboTax "Free Edition" is not associated with the Free File Program and is a basic software offering that supports only the simplest of tax returns, requiring most users (who are eligible for free filing under the Free File Agreement) to pay to file their returns.

---

[1] https://ttlc.intuit.com/community/choosing-a-product/help/what-is-the-turbotax-free-file-program/00/25887 (last visited 8/13/19).

36.     Instead of ensuring access to "taxpayers least able to afford e-filing tax returns at no cost to eligible taxpayers" and making "tax return preparation and filing easier and reduc[ing] the burden on individual taxpayers particularly the economically disadvantaged and underserved populations," Intuit did the opposite.  Intuit diverted and misled the very taxpayers it promised to protect in order to maximize its profits.

37.     On April 22, 2019, ProPublica, a non-profit organization focused on investigative journalism, released its first in a series of articles about the effect of TurboTax's deceptive business practices, entitled "Here's How TurboTax Just Tricked You Into Paying to File Your Taxes."[2]

38.     The authors of the article first searched "irs free file taxes" on Google and the first four hits directed them to websites operated by members of the Free File Alliance:



---

[2] Justin Elliot & Lucas Waldron, *Here's How TurboTax Just Tricked you Into Paying to File Your Taxes*, PROPUBLICA, Apr. 22, 2019, https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes.

39.     The first link was a paid ad for TurboTax that used the word "free" five times and linked to TurboTax's homepage where TurboTax represented that customers' filings would be free guaranteed: "$0 Fed. $0 State. $0 To File. Easily and accurately file your simple tax returns for FREE:"



40.     The authors then clicked on the link and began the process of filing returns for U.S. taxpayers who made under $34,000 and would qualify for the IRS free filing program and satisfy TurboTax's eligibility requirements.

41.     For example, the authors created a profile for a house cleaner who made $29,000. After entering information and answering more than a dozen questions about her finances, the house cleaner was informed that he would have to pay $119.99 to file because his income was derived as an independent contractor:



42.     In another example, a pharmacy cashier without health insurance was told he would have to pay $59.99 to file because an extra form is required if a person does not have health insurance and "TurboTax Free Edition does not cover this situation."  This is exactly the kind of situation that is covered by TurboTax "Freedom Edition" and the Free File Program—yet, Intuit did not redirect the applicant to the applicable programs:



43.     In further examining this issue, ProPublica found that, as soon as the authors clicked on the "FREE GUARANTEED" option on the website, Intuit source code on the TurboTax website tagged the person as NONFFA, meaning "Non Free File Alliance."  In other

words, Intuit never intended its "FREE GUARANTEED" option to be free.  It intended for any

taxpayer, even if they were eligible for free tax services under the Free File Agreement, to pay to

have their tax return prepared and filed by TurboTax:

```
ch: /personal—taxes/online/
cc: USD
c2: 2019-04-12T17:44:20.316Z
c5: NONFFA
c6: TT.com
c7: TTCamp
c9: 582c1659—f678-4316—a059-29ee9324cf4c
c14: performance|domComplete
```

44.     Following publication of the initial article, ProPublica published a follow-up

article entitled "Here Are Your Stories of Being Tricked Into Paying by TurboTax.  You Often

Need the Money."[3] This follow-up article described the stories of dozens of individuals who

could not find the TurboTax's Free File services and, instead, ended up paying to file their return

despite their low income and eligibility for the Free File Program.

45.     Indeed, following publication of the ProPublica article, Intuit admitted that the

TurboTax Free File program was not available through its "'regular' TurboTax.com website,"

and instead had a separate web address[4]:

---

[3] Ariana Tobin, Justin Elliott and Meg Marco, "Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often Need the Money", ProPublica (April 26, 2019), available at https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-byturbotax- you-often-need-the-money

[4] https://ttlc.intuit.com/community/choosing-a-product/help/what-is-the-turbotax-free-file-program/00/25887 (last visited 8/13/19).

## What is the TurboTax Free File program?

We're proud to offer the TurboTax Free File program to hard-working Americans and their families who meet the 2018 IRS eligibility requirements.

The TurboTax Free File program is exclusively available online and has its own dedicated website at taxfreedom.com. It is not accessible from the "regular" TurboTax.com website.

To qualify for free 2018 federal and state tax returns through the TurboTax Free File program, you just need to meet one of these requirements:

- Your 2018 household AGI is $34,000 or less;
- You qualify for the Earned Income Tax Credit (EITC); or
- In 2018, you served as active duty military (including Reservists and National Guard) with a maximum AGI of $66,000, and you have a military-issued W-2.

46.     Consumers were not directed to the Free File website, however, they were directed to the TurboTax website offering Intuit's paid services.  This was demonstrated by ProPublica journalists, who tried to access the Free File program prior to April 15, but were directed to the paid site. Intuit ultimately changed its code, but not until "after April 15, so it was too late for many people who could have filed for free."[5]

47.     In a video statement, Intuit CEO Sasan Goodarzi stated that "[t]o avoid confusion between the IRS Free File program and our own free product, **we . . . decided to have the landing page for the IRS product we offer not rank in search results**."[6] (emphasis added). Goodarzi described this choice as in "the best interest of taxpayers so they were more fully informed about their options and could choose what they felt was best for them."[7]  This was not in the best interest of taxpayers.  It was in the best interest of Intuit.

48.     Intuit's false advertising, and fraudulent, unfair and deceptive conduct directly contradicts the IRS's stated objective of providing free online preparation and filing for lower income taxpayers.  Intuit purposefully omitted and/or concealed material facts regarding the

---

[5] https://www.propublica.org/article/intuit-ceo-in-internal-video-hiding-free-turbotax-was-in-best-interest-of-taxpayers (last visited 8/13/19).

[6] *Id.* (Video Clip 5).

[7] *Id.* (Video Clip 6).

eligibility of taxpayers to use Freedom Edition for free preparation and filing of simple to complicated taxes.

49.    By falsely convincing eligible taxpayers that they were unable to prepare and file their taxes for free, despite the existence of Freedom Edition, Intuit charged Plaintiff and members of the Class for paid TurboTax products when it should have provided Freedom Edition for free pursuant to the Free File Program.

50.    Intuit's conduct has earned the scorn of the government.  On May 6, 2019, Los Angeles City Attorney Mike Feuer initiated a lawsuit against Inuit, accusing them of "actively undermining public access to the IRS' 'Free File' Program."[8]

51.    On December 31, 2019, the IRS announced it was taking action with regard to the Free File program.  Previously, Intuit's fraudulent conduct prevented the IRS from offering its own free filing service, which would be a direct competitor to TurboTax.  Now, the IRS has dropped the prohibition on creating its own filing system.[9]  The IRS will also bar companies such as Intuit from "engaging in any practice that would exclude their Free File offerings from an organic internet search."[10]  This will allow consumers to find the Free File program more easily on internet search engines, rather than having the program hidden by Intuit, as described above.  However, these reforms will not go into effect until the 2020 tax filing season, and millions of consumers, including Plaintiff, have been harmed in the two decades since these deceptive practices began.

---

[8] Michael Hiltzik, *Column: TurboTax and H&R Block are Sued for Allegedly Keeping Americans from Filing Taxes for Free*, L.A. TIMES, May 6, 2019, https://www.latimes.com/business/hiltzik/la-fi-hiltzik-turbotax-lawsuit-20190506-story.html.

[9] Justin Elliot & Paul Kiel, *IRS Reforms Free File Program, Drops Agreement Not to Compete with TurboTax*, PROPUBLICA, Dec. 31, 2019, https://www.propublica.org/article/irs-reforms-free-file-program-drops-agreement-not-to-compete-with-turbotax.

[10] *Id.*

52.     As a direct and proximate result of Intuit's actions and omissions, Plaintiff and similarly situated consumers have been harmed, injured, and damaged.  Not only has Intuit misled consumers, but Intuit has relied on fraudulent compliance with the Free File Program to keep the IRS from offering its own free-filing services, in order to increase its revenues at the expense of Plaintiff and members of the Class.

53.     Intuit's deceptive conduct has ensured that the Free File services intended by the Free File Agreement are not available from any reasonably-accessible source.

**C. The Arbitration Agreement Is Used To Effect The Fraudulent Scheme**

54.     The above facts make clear that Defendant's intention was to ensure that consumers were diverted to the paid TurboTax products.  Defendant then used an arbitration clause embedded in its terms and conditions to effect the fraudulent scheme to deny Plaintiff and Class members the benefit of meaningful redress through class litigation.

55.     Before a user can use the TurboTax Online tax preparation and filing services, the user is required to login to an existing account (if a returning user) or go through a sign-up and registration process (if a new user).  In either process, the user must affirmatively agree to Intuit's license agreement in order to proceed.

56.     If the person is an existing user, he or she is presented with a sign-in page in which to enter his or her username and password.  The sign-in page notifies the user immediately below the blue "Sign In" button, that "*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use and have read and acknowledge our Privacy Statement.*" (Italics and blue font type in original).



57.     The term "*TurboTax Terms of Use*" on this page (as reflected by its blue font type) is hyperlinked text that the user could click on to go to a copy of the "Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2018" (the "TERMS").  The TERMS contain the arbitration clause.

58.     The process is effectively the same for new users.  If the person is a new user, then on the sign-in page the user is presented with an option to "Create an account," which is in blue, hyperlinked text.  If the user clicks on "Create an account," he or she is presented with an account creation page on which he or she can create a TurboTax account by providing an email address and by selecting a user ID, providing a phone number (optional but recommended) and selecting a password.



59.     This "Create your account" page notifies the user immediately below the blue "Create Account" button, that "*By clicking Create Account, you agree to the Turbo Terms of Use, TurboTax Terms of Use and have read and acknowledge our Privacy Statement.*" (Italics and blue font type in original.). The term "*TurboTax Terms of Use*" on this "Create your account" page is hyperlinked text that the user could click on to go to a copy of the TERMS. The TERMS contain the arbitration clause.

60.     All of this must be completed at the initial step before the user is able to proceed with using the software.

61.     In short, by the time the user knows they've been duped, its too late.  The user was already forced to waive his or her right to a day in court, or to even the playing field against Defendant by banding together as consumers victimized by Defendant's conduct.

62.     The arbitration agreement in this case is used by Defendant as a sword to effect a fraudulent scheme, described at length above, to unlawfully funnel consumers into the paid offerings using deceptive sales tactics and requiring users to sign a take-it-or-leave it form agreement to file their taxes.  This is combined with active suppression of the Free File compliant software, such that consumers will not know that they actually qualify to file their taxes for free.

63.     Plaintiff Williams, on behalf of himself and the Class, challenges Defendant's arbitration clause itself as procured by fraud and as part of Defendant's fraudulent scheme.

64.     Plaintiff Williams, on behalf of himself and the putative class, seeks to rescind the arbitration agreement due to fraudulent inducement.

65.     In addition to the arbitration clause itself, Plaintiff Williams, on behalf of himself and the Class, seeks to rescind the remainder of the provisions in the TERMS, including the purported class action waiver due to fraudulent inducement.  Like the arbitration clause, the class action waiver was a means to prevent consumers from obtaining meaningful redress due to the asymmetry of litigation cost compared to the relatively low sums Defendant illegally took from consumers.

## **CLASS ALLEGATIONS**

66.     Plaintiff brings his claims on behalf of a proposed class (the "Class"), defined as follows:

> All Free File Program-eligible persons in the United States who paid to use a TurboTax product to file an online tax return for the 2002 through 2018 tax filing years.

67.     Plaintiff also seeks to represent a subclass defined as all Free File Program-eligible persons who are New York residents who paid to use a TurboTax product to file an online tax return for the 2002 through 2018 tax filing years.

68.     Excluded from the Class is:  Defendant; any of its corporate affiliates; any of its directors, officers, or employees; any persons who timely elects to be excluded from the Class; any government entities; and any judge to whom this case is assigned and their immediate family and court staff.

69.     Plaintiff does not know the exact number of members in the Class, but believes that there are at least tens of thousands of members.  The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  The names and addresses of members of the Class are identifiable through documents maintained by Defendant.

70.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class the predominate over questions that may affect individual Class members include:

(a)  Whether Intuit knowingly failed to comply with, and/or breached its obligations under the Free File Program;

(b)  Whether Intuit engaged in fraud or fraudulent concealment;

(c)  Whether Intuit's website and/or advertising of the Free Edition is false and misleading to reasonable consumers;

(d)  Whether Intuit's online representations that its TurboTax service was guaranteed to be free were designed to, and did, induce Plaintiff and members of the Class to use TurboTax, and spend time gathering and inputting factual details to submit their tax returns, before being informed that Intuit's services were not actually free;

(e) Whether Intuit's online representations that its TurboTax service was guaranteed to be free would be important to a reasonable consumer's decision as to whether to use TurboTax to prepare and file a tax return;

(f) Whether Intuit engaged in other improper conduct in furtherance of its misrepresentations, including manipulation of software source code and online ad placements to impede low-income taxpayers' ability to discover and navigate to its free filing website;

(g) Whether Intuit violated N.Y. GBL § 349;

(h) Whether Intuit violated N.Y. GBL § 350;

(i) Whether Intuit was unjustly enriched by its unlawful conduct;

(j) Whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of Intuit's false and misleading advertising, and unlawful, unfair, fraudulent or deceptive acts or practices;

(k) Whether Plaintiff and members of the Class are entitled to actual damages, statutory damages, restitution, equitable, injunctive or other relief as warranted; and

(l) Whether Intuit should be enjoined from continuing to perpetrate its scheme herein.

71. Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are identically affected by Defendant's wrongful conduct.

72. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class.

73.     Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

74.     Plaintiff is represented by counsel competent and experienced in complex consumer class action litigation.

75.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

76.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense of numerous individual actions.  The benefits of proceeding as a class, including providing injured persons with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

77.     The prosecution of separate actions by individual members of the Class is not feasible and would create a risk of inconsistent or varying adjudications.

**FIRST COUNT**
**Fraudulent Inducement**
**(On behalf of Plaintiff and the Class)**

78.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff brings this count on behalf of himself and the members of the Class and subclass.

80.     Defendant fraudulently concealed and suppressed material facts regarding Plaintiff's and Class members' eligibility to use the fully-functional free tax product offered by

Intuit—the Freedom Edition.  Instead, Intuit steered its eligible customers to TurboTax "Free Edition," a product with limited functionality, and fraudulently misrepresented that upgraded paid products were necessary in order to complete tax preparation and filing.

81.     Intuit had a duty to disclose the existence of its Free File product (the Freedom Edition), the fact that Freedom Edition could be used to prepare and file simple to complicated taxes (unlike Free Edition), and that Freedom Edition was offered free of charge as a result of the Free File Program.

82.     Intuit had exclusive and/or far superior knowledge and access to the facts regarding the Free File Program and the existence of its Freedom Edition product than Plaintiff and members of the Class, and Defendant knew the facts regarding its various products that were not known to or reasonably discoverable by Plaintiff and members of the Class.

83.     Intuit intentionally concealed the foregoing from Plaintiff and members of the Class and made incomplete or fraudulent representations about the availability, applicability and cost of its TurboTax products, while purposefully withholding material facts regarding the eligibility of Plaintiff and members of the Class to use Freedom Edition for free preparation and filing of simple to complicated taxes that contradicted these representations.

84.     A reasonable person purchasing online tax preparation and filing services would consider these misrepresentations, omissions, and concealed facts material because they would be relied on, and because they directly impact the prices paid by consumers, including Plaintiff and members of the Class.  The cost of services is a material concern to a consumer, particularly when that consumer is entitled to those services for free.  Plaintiff and members of the Class would not reasonably expect Intuit to take steps to actively prevent them from accessing the free Freedom Edition, deceive them about the existence and/or applicability of Freedom Edition

and/or the Free File Program, and/or use bait-and-switch tactics to pressure filers entitled to free services to unnecessarily pay for Defendant's paid products.

85.    Intuit concealed and suppressed the distinction between Freedom Edition and Free Edition to falsely convince eligible taxpayers that they were unable to prepare and file their taxes for free, despite Defendant's participation in the Free File Program, and to charge Plaintiff and members of the Class for tax preparation and filing through other TurboTax paid products.

86.    Defendant fraudulently misrepresented, omitted, and/or actively concealed and suppressed these material facts, in whole or in part, to protect its profits.  Defendant concealed these facts at the expense of Plaintiff and members of the Class, all the while reaping the benefits of the IRS's agreement to refrain from offering its own free filing services.

87.    Plaintiff and members of the Class were unaware of these fraudulent misrepresentations and/or omitted or concealed material facts and would not have paid Intuit to prepare and file their returns had they known of Defendant's fraudulent misrepresentations and/or omitted, concealed or suppressed facts.

88.    Had they been aware of the existence, functionality, and/or applicability of TurboTax "Freedom Edition," or the costs associated with the use of TurboTax "Free Edition" and associated product upgrades, Plaintiff and members of the Class would not have paid Intuit to prepare and file their taxes, would have received free services through Freedom Edition, and/or would have used another provider entirely.

89.    Because of Intuit's fraudulent misrepresentations and/or omitted or concealed material facts, Plaintiff and members of the Class sustained damage because they paid for services they should have received—and Defendant agreed with the IRS to offer—for free. Intuit made these fraudulent misrepresentations and/or omitted or concealed material facts in order to artificially inflate profits at the expense of Plaintiff and members of the Class.

90.     Moreover, had Plaintiff and class members known the truth about Intuit's misrepresentations and/or omissions, they would not have agreed to enter into any clauses purporting to mandate arbitration of all claims, and they would not have agreed to Intuit's terms of use governing its tax preparation services, including but not limited to any purported  waiver of class and representative allegations.

91.     Accordingly, any contract purporting to mandate arbitration of all claims is voidable, and Plaintiff seeks to rescind any such agreement on the grounds of fraudulent inducement.  Moreover, the additional terms, including but not limited to any purported waiver of class and representative allegations, are also void voidable as procured via fraudulent inducement. and Defendant is liable to Plaintiff and members of the Class for damages in an amount to be proven at trial.

92.     Intuit's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, and with the aim of enriching Defendant.  Defendant's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, and targeted at those taxpayers most in need of free services, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SECOND COUNT**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

93.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

94.     Plaintiff brings this count on behalf of himself and the members of the Class and subclass.

95.    Intuit made false representations to Plaintiff and members of the Class which Intuit did not intend to keep, and which Intuit in fact did not keep, to induce Plaintiff and members of the Class to purchase Intuit's TurboTax services.  Plaintiff and members of the Class reasonably relied on Intuit's false promises and did not receive the free tax preparation and filing services that Intuit promised them.

96.    Intuit manipulated its software source code to prevent consumers from discovering its Free File website though an internet search, steering them instead to its website with the false representations.  Further, Intuit made it impossible for consumers to navigate directly from the latter website to its actual Free File website, and deliberately failed to inform consumers of their eligibility to file their tax returns for free even after they shared information with Intuit demonstrating such eligibility.

97.    By its deceptive, misleading, and improper conduct alleged herein, Intuit obtained money from, and was unjustly enriched at the expense of, Plaintiff and members of the Class.

98.    It would be inequitable and unconscionable for Intuit to retain the profits, benefits, and other compensation it obtained through its deceptive, misleading, and improper conduct.

99.    Plaintiff and members of the Class are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Intuit through its deceptive, misleading, and improper conduct.

## THIRD COUNT
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

100.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

101.    Plaintiff brings this count on behalf of himself and the members of the New York subclass.

102.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting and concealing from Plaintiff and members of the Class that TurboTax Free Edition is not a Free File Program-compliant product, offers limited functionality, and requires consumers to upgrade to costly paid products for anything other than the most basic tax returns.

103.     In addition, Intuit violated this count by, inter alia, hiding its Free File product from the public, inserting code into its website for Freedom Edition that would prevent the product from appearing in online search results so that, if taxpayers looking to use TurboTax's Free File Program tried to use a search engine to find it, they would be directed to the Free Edition and TurboTax's other paid products, and not the free service that they sought, and not providing a link from its website to access the Freedom Edition.  This conduct was taken by Intuit to artificially inflate profits and deprive low-income consumers of a free product.

104.     Intuit further violated this count by marketing Defendant's functionally-limited Free Edition as "free," while concealing the existence, availability, and functionality of Freedom Edition and marketing paid products to consumers when they were unable to prepare their taxes for free due to the limited functionality of Free Edition.  Intuit marketed Free Edition with the intent to confuse consumers with the Free File product, Freedom Edition.

105.     The foregoing deceptive acts and practices were directed at consumers.

106.     The foregoing deceptive acts and practices are misleading in a material way because they confuse class members into believing they are required to pay for their tax preparation, although they are not.

107.     Plaintiff and members of the New York Subclass were injured as a result because they would not have used Intuit's paid version had they known they were entitled to have their taxes prepared for free.

108.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## FOURTH COUNT
### False Advertising, New York Gen. Bus. Law § 350

109.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

110.    Plaintiff brings this count on behalf of himself and the members of the New York subclass.

111.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting and concealing from Plaintiff and members of the Class that TurboTax Free Edition is not a Free File Program-compliant product, offers limited functionality, and requires consumers to upgrade to costly paid products for anything other than the most basic tax returns.

112.    In addition, Intuit violated this count by, inter alia, hiding its Free File product from the public, inserting code into its website for Freedom Edition that would prevent the product from appearing in online search results so that, if taxpayers looking to use TurboTax's Free File Program tried to use a search engine to find it, they would be directed to the Free Edition and TurboTax's other paid products, and not the free service that they sought, and not providing a link from its website to access the Freedom Edition.  This conduct was taken by Intuit to artificially inflate profits and deprive low-income consumers of a free product.

113.    Intuit further violated this count by marketing Defendant's functionally-limited Free Edition as "free," while concealing the existence, availability, and functionality of Freedom Edition and marketing paid products to consumers when they were unable to prepare their taxes

for free due to the limited functionality of Free Edition.  Intuit marketed Free Edition with the intent to confuse consumers with the Free File product, Freedom Edition.

114.     The foregoing deceptive acts and practices were directed at consumers.

115.     The foregoing deceptive acts and practices are misleading in a material way because they confuse class members into believing they are required to pay for their tax preparation, although they are not.

116.     Plaintiff and members of the New York Subclass were injured as a result because they would not have used Intuit's paid version had they known they were entitled to have their taxes prepared for free.

117.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## FIFTH COUNT
**Breach of Contract**

118.     Plaintiff brings this claim on behalf of herself and the members of the Class.

119.     The IRS Free-Filing Agreement is an agreement between the IRS and the Free File Alliance, of which Intuit is a member.

120.     The IRS Free-Filing Agreement was entered into for the express benefit of low-income taxpayers.

121.     As such, Plaintiff and members of the Class are third-party beneficiaries to the IRS Free-Filing Agreement.

122.     Intuit breached its agreement with the IRS and its duties and obligations to Plaintiffs and members of the Class as third-party beneficiaries by:

a. Failing to comply with Section 2.1, which requires Intuit to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations;"

b. Failing to comply with Section 2.3, which requires Intuit to "[p]rovide greater service and access to the Services to taxpayers," with "Services" being defined in Section 1.13 as "free, online tax return preparation and Filing of Federal individual income tax returns;"

c. Failing to comply with Section 4.15.14 of the Agreement, which requires Intuit to "clearly list [its] free customer service options;" and

d. Failing to comply with Section 4.19.2 of the Agreement, which requires Intuit to "unequivocally inform taxpayers who are ineligible for the free offer at the earliest feasible point" and that the "taxpayer shall be directed back to the IRS Free File Landing Page as the first and most prominent alternative action so that they may immediately consider other Free File offers available from the Free File Program."

123. Plaintiff and members of the Class have been damaged by Intuit's breach of its contractual obligations because they qualified for free filing under the IRS Free-Filing Agreement but were required by Intuit to pay to file their returns.

124. Plaintiff individually and on behalf of the Class seeks recovery for damages, equitable relief, and injunctive relief requiring Intuit to comply with its contractual obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class, that the Court enter judgment in his favor and against Defendant as follows:

A.   An Order certifying each of the proposed Class and subclass and appointing Plaintiff and his Counsel to represent the Class and subclass;

B.   A determination that any purported arbitration clause or class action waiver, as well as the other terms of use, are voidable due to fraudulent inducement, thereby permitting Plaintiff and the Class to rescind any such purported agreement;

C.   An Order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices;

D.   An Order compelling Defendant to notify eligible taxpayers, provide a direct link on the TurboTax website to properly advertise Freedom Edition to eligible participants, and fully reimburse and make whole Plaintiff and all members of the Class for all costs paid to Intuit;

E.   An Order of disgorgement of wrongfully obtained profits;

F.   An award of compensatory, statutory, and punitive damages, in an amount to be determined;

G.   An award of reasonable attorneys' fees costs and litigation expenses, as allowable by law;

H.   Interest on all amounts awarded, as allowed by law; and

I.   Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands, for himself and the Class and subclass, a trial by jury of all issues so triable.

Dated: <u>January 20, 2020</u>                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   /s/ *Yitzchak Kopel*
        Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Andrew J. Obergfell
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
        ykopel@bursor.com
        aobergfell@bursor.com

*Attorneys for Plaintiff*